MICHAEL ASCHENBRENER (277114)
(masch@kamberlaw.com)
**KAMBERLAW LLP**
401 Center St, Suite 111
Healdsburg, CA 95448
Phone: (212) 920-3072
Fax: (212) 202-6364

*Attorneys for Plaintiff and
the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT CHURCHILL, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br><br>   v.<br><br>GATHERAPP, INC., a Delaware corporation,<br><br>                  Defendant. | Case No.<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>**1. Violations of the Telephone Consumer Protection Act, § 227, *et seq.*** |

**INTRODUCTION**

Plaintiff Robert Churchill ("Churchill" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, hereby file this Class Action Complaint, alleging against Defendant GatherApp, Inc. ("Defendant" or "GatherApp") as follows:

## I.    NATURE OF THE ACTION

1.    This case arises out of Defendant's unlawful practice of sending Plaintiff Churchill text (SMS) messages without his consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

2.    When a person downloads Defendant's Gather mobile application from Apple's App Store or Google's Play Store, Defendant automatically harvests the data in the downloader's contacts list without consent and then sends text messages without consent to each person in the downloader's contacts lists, inviting these contacts to download the Gather app.

3.    Defendant's conduct constitutes a knowing, willful, and intentional invasion of privacy to Plaintiff and putative Class members.

## II.    THE PARTIES

4.    Plaintiff Robert Churchill is, and at all relevant times was, a citizen and resident of the County of Sacramento, State of California. He is, and at all times relevant was, a "person" as defined by 47 U.S.C. § 153 (39).

5.    Defendant GatherApp, Inc. is a California corporation with its principal place of business located at 301 Bryant St #201, San Francisco, CA 94107. Defendant is the developer and distributor of a mobile application (iOS and Android) called Gather.

## III.    JURISDICTION AND VENUE

6.    **Jurisdiction**. This Court has personal jurisdiction over Defendant because (a) a substantial portion of the wrongdoing alleged herein took place in this state, (b) Defendant is a Delaware corporation registered with the California Secretary of State, is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing, and sale of products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions

of fair play and substantial justice.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this District under 28 U.S.C. § 1391(b). Defendant resides in this district.

9. **Intradistrict Assignment**. Under L.R. 3-2(d), this case should be assigned to the San Francisco Division or Oakland Division.

## IV.   FACTUAL ALLEGATIONS

**A.   The TCPA**

10. The purpose of the TCPA is to protect consumers from unwanted calls and text messages, such as those Defendant sent to Plaintiff.

11. Under the FCC's July 10, 2015 Order (the "2015 FCC Order") (Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; American Association of Healthcare Administrative Management, Petition for Expedited Declaratory Ruling and Exemption; et al, Federal Communications Commission, 30 FCC Rcd. 7961 (July 10, 2015)), companies wishing to place certain call or text messages must obtain prior express written consent.

12. The 2015 FCC Order also clarified that telephone calls and text messages have the same protections under FCC rules, and that text messages are "calls" for purposes of the TCPA.

13. When soliciting consent, the consumer consent to receive solicitations must be unambiguous, meaning the consumer must receive a "clear and conspicuous disclosure:" (1) that s/he will receive future calls or text messages that deliver auto-dialed and/or pre-recorded telemarketing messages; and, (2) that consent is not a condition of purchase.

14. Marketers must disclose the following: "By participating, you consent to receive text messages sent through an automatic telephone dialing system."

15. The elements of a cause of action under the TCPA are: (1) the defendant called a cellular telephone; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent and/or after the recipient had withdrawn consent.

16. A consumer may recover $500 in statutory damages for each violation of the

TCPA, and $1,500 for violations that proved to be willful.

17.     The 2015 FCC Order also requires companies to keep consent records for four (4) years.

**B.     <u>Defendant's data-mining and text messaging practices</u>**

18.     On information and belief, Defendant does the following:

19.     When a smart phone user downloads the Gather mobile app, Defendant automatically and, without user knowledge or consent, scans the contents of the user's contacts list.

20.     Defendant then automatically and, without user knowledge or consent, sends text messages to all of the persons in the user's contact list, urging those contacts to download the Gather mobile app.

21.     Users have no ability to stop Defendant from mining the data on their phones or sending text messages to their contacts.

**C.     <u>Plaintiff Churchill's Experience with Defendant</u>**

22.     On October 31, 2017, out of the blue, Plaintiff Churchill received a text message from the phone number 661-443-3176 that stated in full: "Hey Bobby, you have been invited! Your friends want to hang :) Check it out! – https://goo.gl/qWg9kX Reply HELP for help, STOP to stop invites from more friends[.]" The message also included a gif:



23.     On information and belief, the phone number 661-443-3176 is controlled by Defendant.

24.     The link included in the text message leads to gatherwith.us, which is a website controlled by Defendant.

25.     Other than including Plaintiff Churchill's nickname, Bobby, which was likely scraped from someone's contacts list by a computer system, there is nothing personal about the content of the text message. Specifically, the text does not mention the name of the "friend" that apparently wants "to hang."

26.     On information and belief, the text message Plaintiff Churchill received from Defendant is similar to or the same as thousands of messages placed to the putative Class Members.

27.     On information and belief, Plaintiff and the putative Class Members' phone numbers were entered into and stored in a dialing database.

28.     On information and belief, Defendant utilized equipment with the capacity to call random, sequential, and/or pre-programmed phone numbers in order to send text messages to Plaintiff and putative Class Members.

29.     On information and belief, Defendant sent thousands of similar text messages to individuals whose numbers had also been uploaded into the database.

30.     Plaintiff Churchill had no relationship with GatherApp and did not know why he received a message purporting to be from GatherApp. Plaintiff had not provided his phone number to GatherApp.

31.     Defendant did not make the requisite disclosures to Plaintiff regarding use of an ATDS and did not obtain Plaintiff's prior express written consent to receive text messages for any purpose.

32.     Despite not obtaining prior express written consent or making the requisite disclosures, Defendant sent one (1) or more text messages ("calls" in FCC parlance) to Plaintiff Churchill inviting Plaintiff to download Gather. On information and belief, Defendant used an ATDS to send text messages without prior express written consent to Plaintiff Churchill.

33.     The message Plaintiff Churchill received was not merely informational, but rather also included advertising.

34.     The message appears to be a form, impersonal, generic messages sent *en masse*.

35.     Defendant intentionally sent this message to Plaintiff Churchill in order to advertise the availability of its mobile app.

36.     Plaintiff Churchill received this message in violation of the TCPA.

37.     The text message invaded Plaintiff Churchill's privacy.

38.     Defendant's conduct of sending text messages containing advertising to Plaintiff Churchill and TCPA Class Members without consent and without providing the required disclosures as described herein was intentional and willful.

# V. CLASS DEFINITION AND CLASS ALLEGATIONS

39.     Plaintiff Churchill brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) & (b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member of the "TCPA Class," defined as follows:

> All persons in the United States of America to whom Defendant has placed any pre-recorded voice calls or sent any automated commercial text message without obtaining prior express written consent and/or for whom Defendant has no record of providing the required disclosures between October 16, 2013 and the date of class certification of this action.

40.     Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer; (vi) all lawyers of record in this matter or any matters with which this matter gets consolidated; (vii) all persons who received a pre-recorded phone call or an automated text message from Defendant as a result of investigative work by any lawyer in this matter or any matters with which this matter gets consolidated.

41.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

42.     **Numerosity**: Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes that Class members number in the thousands of persons, if not more.

43.     **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include,

among others:

    a.      Whether Defendant has a policy of obtaining express written consent prior to sending text messages to consumers;

    b.      If so, whether Defendant enforces such a policy;

    c.      Whether Defendant has a policy of providing the disclosures required by the FCC concerning the use of ATDS to consumers prior to sending text messages to consumers;

    d.      If so, whether Defendant enforces said policy;

    e.      Whether Defendant sends text messages to consumers;

    f.      Whether Defendant places phone calls to consumers;

    g.      Whether Defendant's conduct, as alleged herein, violates the TCPA;

    h.      Whether Defendant scans the content of users' contacts lists;

44.    This action is properly maintainable as a class action for the reasons set forth below.

45.    **Typicality:** Plaintiff Churchill's claims are typical of the claims of the members of the TCPA Class he seeks to represent because Plaintiff Churchill, like the TCPA Class members, received text messages from Defendant without providing prior express consent or receiving the required disclosures from Defendant. Defendant's practices were and are uniformly directed to all consumers. Plaintiff Churchill and the TCPA Class sustained similar injuries arising out of Defendant's conduct in violation of federal law. Plaintiff and the members of the TCPA Class he represents sustained the same types of damages and losses. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

46.    **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class members Plaintiff seeks to represent. Plaintiff has retained highly competent counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and

the interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

47. **<u>Superiority and Substantial Benefit</u>:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims. The damages suffered by each individual Class member are limited and prescribed by law. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system, due to the complex legal and factual issues of the case. By contrast, the class-action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

48. Certification of this class action is appropriate under Fed. R. Civ. P. 23(b)(2) & (b)(3) because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. Certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49. Certification of Plaintiff's claims for class-wide treatment is also appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

# VI.  CAUSES OF ACTION

## COUNT I
### Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*

51.  Plaintiff Churchill re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

52.  Defendant sent commercial text messages ("calls" in FCC parlance) to the mobile cellular telephones of Plaintiff Churchill and the TCPA Class.

53.  On information and belief, Defendant used an ATDS to send commercial text messages to the mobile cellular telephones of Plaintiff Churchill and the TCPA Class.

54.  Defendant did not obtain express written consent prior to sending commercial text messages to Plaintiff Churchill or the TCPA Class.

55.  Defendant did not provide to Plaintiff Churchill or the TCPA Class the disclosures required by the FCC concerning the use of an ATDS.

56.  Plaintiff Churchill and the TCPA Class are entitled to, and seek, awards of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

57.  Plaintiff Churchill and the TCPA Class are entitled to, and seek, awards of $1,500.00 in statutory damages for each and every violation because Plaintiff Churchill alleges Defendant's conduct was and is willful, pursuant to 47 U.S.C. § 227(b)(3)(C).

58.  Plaintiff Churchill and the TCPA Class are entitled to, and seek, injunctive relief prohibiting such conduct in the future.

59.  Plaintiff Churchill and the TCPA Class are also entitled to recover reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

A.  For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.  For an order awarding, as appropriate, monetary damages to Plaintiff Churchill and the TCPA Class for Defendant's knowing and willful violations of the TCPA;

C.  For an order enjoining Defendant from engaging in the conduct alleged herein;

1    D.    For an order awarding attorneys' fees and costs;

2    E.    For an order awarding pre-and post-judgment interest; and

3    F.    For such other and further relief as the Court deems just and proper.

4

5    DATED:  November 15, 2017                **KAMBERLAW LLP**

6

7                                    By:   s/ Michael Aschenbrener

8                                          Michael Aschenbrener
                                           *Attorney for Plaintiff and the Putative Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff, Individually and on behalf of All Others Similarly Situated, hereby demands that this matter be tried by jury.

DATED: November 15, 2017       **KAMBERLAW LLP**

By: <u>s/ Michael Aschenbrener</u>
      Michael Aschenbrener
      *Attorneys for Plaintiff and the Putative Class*